IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **MARCQUES JERMAINE WHORLEY,** | **CASE NO. 7:15CV00027** |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| **ROANOKE CITY SHERIFF OFFICE, ET AL.,** | By: Norman K. Moon |
| | United States District Judge |
| Defendant(s). | |

Marques Jermaine Whorley, a Virginia inmate proceeding *pro se*, filed this civil rights action under 42 U.S.C. § 1983 against the Roanoke City Sheriff's Office and two of its officers for allegedly accusing and convicting him of a disciplinary infraction without evidence, in violation of his constitutional rights. "The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity[,]" and "[o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted. . . ." 28 U.S.C. § 1915A(a)-(b)(1). Upon review of Collins' complaint, I conclude that he has no legal basis for a § 1983 claim against the defendants and, therefore, I will dismiss this case without prejudice.

I.

Whorley's complaint states his intention to sue "Officer Scott [for] reporting false statements" and "Sgt. Finnin [for] finding [him] guilty after reviewing evidence of video that did not support the officer's report." (Docket No. 1, at 2.) Whorley does not state what relief he seeks in this lawsuit. Copies of jail disciplinary proceedings attached to the complaint provide details about the events on which Whorley bases these claims. On December 30, 2014, Whorley

received a disciplinary charge of "assault (threats to staff)" and was placed in segregation, pending a hearing. (Docket No. 2, at 3.) The basis for the charge was Scott's report that, early in the afternoon of December 25, 2014, Whorley had stated that when he was released from the jail, he would shoot Scott. On January 5, 2015, a disciplinary board of three officers (including Sgt. Finnin) conducted a hearing on the charge. Whorley denied making any threat toward Scott and told the committee that he did not encounter Scott at the time and place Scott reported. Finnin stated: "I reviewed the video from that day and can't determine anything from it." (Docket No. 2, at 6.) Based on Scott's report and witness statements not included in the court's record, however, the board found Whorley guilty of making the threat and imposed a penalty of ten days in punitive segregation, with credit for time served. Based on records showing a pattern of incidents between Whorley and jail staff, the committee also recommended an increase in Whorley's security classification and a change in his cell assignment.

Whorley appealed the board's decision. After investigating all "evidence, reports, video and witness statements" considered by the board, the reviewing officer approved the board's recommendations regarding the assault conviction, the penalty, and the classification change. (Docket No. 2, at 4.) Because Whorley was not eligible to earn good conduct time during his segregation sentence, his projected release date changed from April 25, 2015, to April 30, 2015.

## II.

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). To prevail on a procedural due process claim, such as Whorley's apparent claim in this action, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. *Bevrati v. Smith*, 120 F.3d 500, 502 (4th Cir.

2

1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are generally limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or "will inevitably affect the duration" of his confinement. *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Further, prisoners do not have a constitutionally recognized liberty interest in a particular security classification nor a constitutional right to be confined in a particular prison. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

Whorley has presented no allegations suggesting that, as a result of his disciplinary conviction, he was exposed to conditions posing any atypical hardship on him, compared to conditions contemplated by his sentence or that the ten-day segregation penalty inevitably affected the length of his term of confinement. At the most, Whorley's submissions indicate a change in his "projected" release date, based on good conduct time he was not able to earn during the segregation penalty period. As such, Whorley has failed to demonstrate that he had a constitutionally protected liberty interest at stake, and therefore, he had no entitlement to federally mandated procedural protections during the disciplinary proceedings.

In any event, Whorley's submissions demonstrate that he received all procedural protections required under federal law. *See Wolff v. McDonnell*, 418 U.S. 539 (1974) (holding that before punishing inmate with loss of earned good conduct time, officials must advance

written notice of disciplinary charge, written record of impartial disciplinary committee's findings and evidence on which it convicted him). Whorley complains that the evidence did not support the board's finding of guilt. It is well established, however, that the facts in support of a prison disciplinary conviction need not be proven beyond a reasonable doubt, even where good conduct time is at risk. *Superintendent v. Hill*, 472 U.S. 445, 456 (1985). A reviewing court must uphold the disciplinary board's finding if "there is any evidence in the record that could support the conclusion reached." *Id.* at 455. The board clearly had some evidence in support of its finding that Whorley was guilty of threatening Scott. Although the video did not verify either Scott's report or Whorley's testimony, the board was entitled to find that Scott's report and other evidence outweighed the credibility of Whorley's statements, and so had some evidence under *Hill* to support the finding of guilt on the assault charge.

### III.

For the reasons stated herein, I conclude that Whorley's submissions do not state any claim of constitutional significance actionable under § 1983. Therefore, I will dismiss the complaint without prejudice, pursuant to § 1915A(b)(1), as factually and legally frivolous.

ENTER: This __15th__ day of April, 2015.

*[signature]*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

4

Case 7:15-cv-00027-NKM-RSB   Document 12   Filed 04/15/15   Page 4 of 4   Pageid#: 38